**FORDSON COAL CO. v. MOORE, Sheriff.**

District Court, E. D. Kentucky. February 15, 1929.

No. 3822.

Clifford B. Longley and W. R. Middleton, both of Detroit, Mich., Harman, Francis & Hobson, of Pikeville, Ky., and J. G. Bruce and Cleon K. Calvert, both of Pineville, Ky., for complainant.

Frank E. Daugherty, Atty. Gen., Gardner K. Byers, of Louisville, Ky., John W. Farmer, of Lexington, Ky., and Zach Justice, of Pikeville, Ky., for defendant.

ANDREW M. J. COCHRAN, District Judge. These consolidated suits are before me on motions for preliminary injunctions. The disposition thereof has been delayed somewhat by the fact that it was at first thought that three judges were required to hear and decide the motions, but since then the Supreme Court has held that in such suits three judges are not required.

There are three suits consolidated. A preliminary injunction is sought in each one. The injunctions are to restrain the defendant from collecting or attempting to collect certain taxes from the plaintiff, to wit, $10,945.40 for the tax year beginning July 1, 1924; $7,397.78 for the tax year beginning July 1, 1925; and $8,484.56 for the tax year beginning July 1, 1926. The ground upon which the right thereto is based is that the assessment of plaintiff's coal properties and mining plant in Pike county in this district on the waters of Pond creek and Blackberry creek, tributaries of Tug river, for those years, were, to the extent of such amount of taxes, intentionally placed at a greater percentage of fair cash value than other taxable property in that county. The excessive assessments complained of were made by the State Tax Commission. The allegation in each bill is that "it singled complainant out of the entire class of taxpayers of said county to which it belongs, and increased its taxable values and taxes in said unit, and made its said taxable values and taxes higher than those of any other taxpayer in said county by the exact amount of the increased value fixed by said Commission as set forth in the thirteenth paragraph of this bill and by the exact amount stated in said paragraph as having been added to its tax bill by said il-

legal action by said Commission." The claim is that by such discrimination the State Tax Commission denied plaintiff of the equal protection of the laws in violation of the Fourteenth Amendment. The discrimination complained of seems to be between taxpayers of the same class in Pike county, not between it and other taxpayers therein of a different class nor between it and other taxpayers whether of the same class or not outside of Pike county. In its brief it claims that the case established by its affidavit is a clear one "of a systematic and intentional discrimination by the State Tax Commission of Kentucky and a determined effort upon part of that commission to compel it to pay taxes out of all proportion to the taxes paid by other taxpayers"; and, again, that it is "as gross a case of fraudulent discrimination against the plaintiff here as has ever been revealed in a court of justice." It states its claim further in this way: "The State Tax Commission has intentionally and systematically discriminated against Fordson Coal Company and raised the valuation of its coal more than 60% and thus produced a gross inequality in the valuation of Fordson Coal Company and the other taxpayers of Pike County." It is therefore not certain according to plaintiff's bills whether its claim is that there is an intentional discrimination between plaintiff and other taxpayers in the same class in Pike county or between it and all other taxpayers thereof whether of the same class or not. I will assume that it is the latter. I will assume further that if there is such a discrimination it results that there is an intentional discrimination between plaintiff and all other taxpayers of the state. The basis for this is that the State Tax Commission has equalized the assessments of all the counties for the years involved, the meaning of which is that they are all substantially at least assessed at the same percentage of fair cash value. This being so, it follows that if there is an intentional discrimination between plaintiff and the other taxpayers of Pike county there is such discrimination between it and all other taxpayers of the state. I will therefore dispose of the motions upon these assumptions. In order for plaintiff to have a case it is essential that there should have been an intentional discrimination between plaintiff and the other taxpayers. It is not sufficient that, through an error of judgment in the method adopted or otherwise, plaintiff's property has been assessed by the State Tax Commission at a higher percentage of fair cash value than that of the other taxpayers. Such excess in assessment must have

been intentional, which results if there has been a systematic assessment of the property of other taxpayers at a less percentage of fair cash value than plaintiffs.

The plaintiff in support of its contention has filed eleven affidavits. Three of the affiants were its employees; three were members of the board of supervisors for Pike county for the years involved; three were citizens and taxpayers of that county, and two mining engineers, residents thereof, and employed therein. The defendant has filed the affidavits of the tax commissioner of Pike county and of two members of the State Tax Commission; of two former members of the Mineral Resources Survey; and numerous affidavits as to the percentage of fair cash value at which property is assessed in ninety other counties of the state. The five affidavits of defendant other than these affidavits relating to other counties have the advantage over plaintiff's eleven affidavits in a more detailed presentation of the relevant facts. After a careful consideration of all the affidavits, I have reached the conclusion that plaintiff has not made out its case. I would not be justified in finding that plaintiff's properties are assessed at a greater percentage of fair cash value than the other property in Pike county. There are several outstanding facts which weigh heavily against plaintiff's contention. One is the great increase in the assessment of property in Pike county from 1922 to 1926. The assessment in the former year was $19,698,726 and the latter it was $30,083,183, an increase of over $10,000,000. The increase in the assessment of plaintiff's property for the year 1925 was $627,710. The assessment made by the county board of supervisors was $2,308,825. It was increased by the State Tax Commission to $2,936,535. The first increase in the assessment of the plaintiff's property was made for the year 1924. The plaintiff attempted to overthrow this increase by direct appeal to the state courts, but failed. Johnson v. Fordson Coal Co., 213 Ky. 445, 281 S. W. 472. The rest of this great increase of over $10,000,000 in the assessment of property in Pike county, due largely to the initiative and efforts of the State Tax Commission, came from the increase of the assessments of other taxpayers, including other coal companies, which were acquiesced in by such taxpayers. The increase in plaintiff's assessment was a part of the plan of the State Tax Commission to increase the assessment of property in Pike county.

Another such fact is that there are three great coal companies owning and operating coal mining properties in Southeastern Kentucky. They are the United States Coal & Coke Company, Consolidated Coal Company, and the plaintiff. It is apparent from a comparison of their respective assessments for the years involved that there has been no discrimination against plaintiff and in favor of either of the other two companies. No complaint has been made by those two companies of the assessments against them so far as this record discloses.

Still another such fact is that the assessment of plaintiff's property after the increase made by the State Tax Commission is greatly less than plaintiff paid for its properties in 1923. According to the stamps on its deed, the consideration paid therefor was $6,000,000. The defendant intimates that it paid much more, possibly as much as $8,500,000. The basis for this suggestion is not given. It is conceded by defendant that plaintiff paid too much for the property. It is not unlikely that the plaintiff after it purchased the properties made substantial improvements.

And still another such fact is that according to the affidavits filed by the defendants to the assessments in ninety other counties in the state, the assessments therein are over 80 per cent. of the fair cash value. The State Tax Commission's ideal is 85 per cent. Assuming that the property in Pike county has been equalized with these other counties, the percentage of value at which it is assessed is as much as 80 per cent. Certainly plaintiff's property is not assessed at such a percentage of its fair cash value. 80 per cent. of $4,000,000, which is certainly $2,000,000 less than plaintiff paid for its properties in 1923, is $3,200,000.

The task of the State Tax Commission is an extremely difficult one. Since the rank discrimination against franchise corporations, overthrown in the railroad litigation, it and its predecessors, the equalization board and the board of valuation and assessment, have been engaged in a heroic effort to put an end to such discrimination by raising the assessments of other property, and they have succeeded to a large degree. There is not the slightest reason why the State Tax Commission should discriminate. Its work is not to be lightly overthrown. I find no evidence whatever of any conscious or intentional discrimination against plaintiff.

The motions for preliminary injunction are denied.