## Blue Diamond Coal Co. et al. v. Cornett, Sheriff, et al.

Oct. 19, 1945.

Craft & Stanfill for appellants.

Elbert Strong for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

The appellants, Blue Diamond Coal Company, Harvey Coal Corporation and Hardy-Burlingham Mining Company, are engaged in the coal mining business in Perry county, and each of them listed its property for taxation as of July 1, 1943, for the tax year 1944. The Perry County Board of Tax Supervisors in each instance fixed the valuation of the property for tax purposes at a substantially higher amount than the valuation placed on its property by the property owner in its tax schedule filed with the County Tax Commissioner. For example, the Blue Diamond Coal Company listed its property as follows: Real estate $183,347, tangible personal property $173,239, and intangible personal property $12,084, a total of $368,670. The County Board of Supervisors fixed the valuation of the real estate at $328,900, tangible personal property at $286,537, and intangible personal property at $12,084, a total of $627,521. The assessments of Harvey Coal Corporation and Hardy-Burlingham Mining Company were similarly increased. The aggrieved taxpayers appealed to the

Kentucky Tax Commission in the manner provided by subsection 4 of section 133.120, KRS, and on June 8, 1944, an agreed order was entered in each case fixing the value of the property as of July 1, 1943, at a sum materially less than the valuation fixed by the County Board of Supervisors. The taxable value of the property of the Blue Diamond Coal Company was reduced from $627,521 to $562,084, of the Harvey Coal Corporation from $262,200 to $228,000, and of the Hardy-Burlingham Mining Company from $384,671 to $351,153. It was ordered in each case that the value so fixed by the Kentucky Tax Commission should be used by the clerk of the Perry County Court in making out the tax bill instead of the value fixed by the Perry County Board of Supervisors. On June 24, 1944, the Kentucky Tax Commission, pursuant to the authority conferred upon it by KRS 133.150, directed that the total valuation of certain classes of property in Perry county, as certified by the County Board of Supervisors, should be increased by 10 per cent. This increase when applied to the lands and improvements of appellant Blue Diamond Coal Company made the valuation thereof $313,865 instead of $285,332, the amount fixed by the Kentucky Tax Commission's order of June 8, 1944. Proportionate increases in the valuations of the lands and improvements of the other appellants resulted. Each of the appellants paid to the sheriff the amount of taxes due on the assessment by the Kentucky Tax Commission's order of June 8, 1944, less the 2 per cent. discount allowed for the payment thereof on or before November 1, 1944. The sheriff credited the payment on the tax bill, but refused to surrender the bill to the taxpayer. On February 14, 1945, Blue Diamond Coal Company brought an action in the Perry Circuit Court to enjoin the sheriff from taking any steps to collect the additional tax claimed to be due by reason of the 10 per cent. blanket increase directed to be made by the Kentucky Tax Commission. It alleged in its petition that the Kentucky Tax Commission acted in a judicial capacity when it entered the order of June 8, 1944, fixing the value of plaintiff's property as of July 1, 1943; that its judgment had never been set aside, vacated or appealed from, and was in full force and effect, and the clerk of the Perry County Court had wrongfully and illegally applied the 10 per cent. blanket increase to plaintiff's lands and improvements. Raymond Lykins, clerk

of the Perry County Court, was made a defendant. Similar petitions were filed by Harvey Coal Corporation and Hardy-Burlingham Mining Company. The defendants filed an answer in each case in which they alleged that the order entered by the Kentucky Tax Commission on June 8, 1944, equalized the plaintiffs' assessment with the assessments of other property owners of the county; that the value placed on the property was only 60 per cent. of its fair cash value; and that later, in order to equalize the valuations of property in Perry county with the valuations in other counties in the State of Kentucky, it directed a blanket increase of 10 per cent., which placed the assessed value of property in Perry county on the same basis as the property in other counties. The three cases were consolidated, and were submitted upon the pleadings. The demurrer to the answer was overruled, the demurrer to the petition was sustained, and the petition was dismissed.

Appellants rely upon the case of McCracken Fiscal Court v. McFadden, 275 Ky. 819, 122 S. W. 2d 761, and argue that the Kentucky Tax Commission acted in a judicial capacity when it entered the order of June 8, 1944, fixing the value of their property on their respective appeals from the action of the County Board of Supervisors. The flaw in the argument is that the Tax Commission is only an administrative body and cannot act in a judicial capacity. The decision in the McFadden case, where the appeal was from the County Board of Supervisors to the Quarterly Court, was bottomed solely on the fact that the Quarterly Court is a judicial tribunal created by the Constitution as one of the courts of the Commonwealth. It was held that the judgment of the Quarterly Court, being that of a court of competent jurisdiction, was binding upon the parties.

KRS 131.030 provides that the Department of Revenue shall exercise all administrative functions of the state in relation to the state revenue and tax laws, the equalization of tax assessments, the supervision of tax collections, and the enforcement of revenue and tax laws. Subsection 2 of this section provides: "The Department of Revenue shall have all the powers and duties with reference to assessment or equalization of the assessment of property heretofore exercised or performed by any state board or commission." KRS 133.120 provides for an appeal by an aggrieved taxpayer from

the county board of supervisors to the circuit court in the county where the property exists or the Kentucky Tax Commission. The Statute provides that "the court or Tax Commission shall hear the evidence de novo and fix a value upon the property which shall be equitable with assessments determined for other property by the county tax commissioner or the board of supervisors." The Statute then provides that any of the parties may appeal from the judgment of the circuit court to the Court of Appeals of Kentucky or from the Kentucky Tax Commission to the Franklin Circuit Court. KRS 133.150 reads: "The Kentucky Tax Commission shall equalize each year the assessments of the property among the counties. It shall compare the recapitulation of the county tax commissioner's books from each county with the records of sales of land in such county or with such other information that it may obtain from any source and shall determine the ratio of the assessed valuation of the property to the fair cash value. The Kentucky Tax Commission shall have power to increase or decrease the aggregate assessed valuation of the property of any county or taxing district thereof or any class of property or any item in any class of property. The Kentucky Tax Commission shall fix the assessment of all property at its fair cash value. When the property in any county, or any class of property in any county, is not assessed at its fair cash value, such assessment shall be increased or decreased to its fair cash value by fixing the percentage of increase or decrease necessary to effect the equalization."

These Statutes clearly contemplate that the Kentucky Tax Commission shall act as a state board of equalization. When it hears a taxpayer's appeal from the final action of a county board of supervisors, it must hear the evidence de novo and fix not the fair cash value of the property but a value "which shall be equitable with assessments determined for other property by the county tax commissioner or the board of supervisors." If the State Tax Commission, on an appeal from a county board of supervisors, fixed the assessment of the taxpayer's property at its fair cash value and the evidence showed that all other property in the county of a similar character was assessed at less than its fair cash value, the Commission's action would have to be set aside on appeal. Eminence Distillery Company v. Henry County

Board of Supervisors, 178 Ky. 811, 200 S. W. 347; Prestonsburg Water Company v. Prestonburg Board of Supervisors, 279 Ky. 551, 131 S. W. 2d 451. KRS 133.150 makes it the duty of the State Tax Commission to equalize each year the assessments of property among the counties. It is required to determine the ratio of the assessed valuation of the property of a county to the fair cash value and to increase or decrease the aggregate assessed valuation so as to place the assessments of all counties on the same plane, and that plane is fixed as the fair cash value of the property. In the instant case the Commission necessarily found when the appeals of the individual taxpayers were pending before it that their property had been assessed at a higher percentage of its fair cash value than other similar property in the county, and the Commission's order of June 8, 1944, merely equalized their assessments with the assessments of other property owners. Later when it undertook to equalize the assessments of all the counties, it found that the property in Perry county was assessed at less than its fair cash value, and at a less percentage than the property of other counties. In both instances, it acted as an administrative body. In McCracken Fiscal Court v. McFadden, supra [275 Ky. 819, 122 S. W. 2d 763], relied upon by appellants, it was said: "The valuation of property is the most important element of assessment, but is not strictly the assessment itself. Fixing the values and making the assessment is an administrative proceeding and a board established by the legislature for that purpose is an administrative body. In performing their duties in valuing property, and in correcting and equalizing assessments, these boards act largely upon the general knowledge of their members or upon information acquired from the individual property owner, who is usually heard informally. They are not judicial tribunals though they exercise quasi judicial powers. Under our constitution (section 109, 135) the legislature could not grant such a board the judicial power of a court."

The circuit court properly dismissed appellants' petitions, and the judgment in each case is affirmed.